IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Kristoffer Larsgard,<br><br>                Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>                Respondents. | No. CV-14-08092-PCT-SPL<br><br>**ORDER** |

Before the Court is Petitioner John Kristoffer Larsgard's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). The Honorable James F. Metcalf, United States Magistrate Judge, has issued a Report and Recommendation ("R&R") (Doc. 13), recommending that the petition be denied with prejudice. Petitioner has objected to the R&R (Doc. 21). For the following reasons, the Court accepts and adopts the R&R, and denies the petition.

**I.    Background[1]**

Petitioner was indicted in Navajo County Superior Court, Case Nos. CR2011-00780 and CR2011-00767, on charges of attempted second degree murder, aggravated assault, endangerment, and child abuse. (Doc. 9-1, Exh. DD.) Following a jury trial, Petitioner was convicted of six counts of aggravated assault and one count of felony endangerment. (Doc. 9-8, Exh. GG.) Petitioner was acquitted on the two remaining counts of aggravated assault. (Doc. 9-8, Exh. HH.) On April 24, 2012, Petitioner was

---

[1] No objection to the factual background, and therefore the Court adopts it summarily.

sentenced to concurrent presumptive sentences of either 7.5 or 3.5 years on the counts of aggravated assault, and a concurrent sentence of 2.25 years on the charge of endangerment. (Doc. 9-8, Exh. NN.)

Petitioner filed a timely direct appeal, and in a Memorandum Decision issued May 7, 2013, the Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Doc. 9-9, Exh. SS; *State v. Larsgard*, 2013 WL 1908037 (Ariz. Ct. App. May 7, 2013).) Petitioner filed a petition for review by the Arizona Supreme Court (Doc. 9-9, Exh. TT) which was summarily denied on September 16, 2013 (Doc. 9-9, Exh. YY).

Petitioner filed a timely federal habeas petition (Doc. 1). In Ground One, Petitioner claims that his due process rights were violated when he did not receive necessary medications which rendered him incompetent to stand trial. In Ground Two, Petitioner claims: (1) the state court violated his due process rights by failing to preclude a late-disclosed lab report and associated expert at trial; (2) the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to obtain and disclose the video recording of his booking; and (3) the prosecution violated *Brady* when it failed to disclose the fact that two of the victims had filed civil lawsuits against Petitioner. In Ground Three, Petitioner claims that there was insufficient evidence to support his convictions.  In Ground Four, Petitioner argues that he was persecuted on the basis of his national origin.

Following full briefing by the parties, the Magistrate Judge issued an R&R recommending that the petition be dismissed. (Doc. 13.) As to Petitioner's claims in Grounds One and Two, the R&R found that Petitioner had failed to show that the Arizona Court of Appeal's decision was contrary to, or involved an unreasonable application of federal law, or that it was based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d). The R&R further concluded that Petitioner's claims in Grounds Three and Four were procedurally defaulted and barred from review.

II. **Standard of Review**

A district judge "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge." 28 U.S.C. § 636(b). When a party files a timely objection to an R&R, the district judge reviews *de novo* those portions of the R&R that have been "properly objected to." Fed. R. Civ. P. 72(b). A proper objection requires specific written objections to the findings and recommendations in the R&R. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); 28 U.S.C. § 636(b)(1). It follows that the Court need not conduct any review of portions to which no specific objection has been made. *See Reyna-Tapia*, 328 F.3d at 1121; *see also Thomas v. Arn*, 474 U.S. 140, 149 (1985) (discussing the inherent purpose of limited review is judicial economy). Further, a party is not entitled as of right to *de novo* review of evidence or arguments which are raised for the first time in an objection to the R&R, and the Court's decision to consider them is discretionary. *United States v. Howell*, 231 F.3d 615, 621-622 (9th Cir. 2000).

**III.    Discussion**

Having reviewed the objected to recommendations *de novo*, the Court agrees and adopts the Magistrate Judge's findings.

**A.    Medication**

In Ground One, Petitioner argues that his right to due process was violated when he was denied medications previously prescribed by his physician for severe neck pain and was provided incorrect or inadequate medication by jail medical staff that "severely impacted his ability to communicate with counsel, prevented him from reacting rapidly to trial developments, sedated him, and diminished his ability to express emotions." (Doc. 1 at 28.)

Under clearly established federal law, the conviction of a defendant who was incompetent to stand trial violates due process. *Dusky v. United States,* 362 U.S. 402, 403, (1960); *Godinez v. Moran*, 509 U.S. 389, 402 (1993). A defendant is incompetent to stand trial if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope v. Missouri*, 420 U.S. 162 (1975). It follows where the administration, discontinuation, or

lack of medication affects or undermines a defendant's mental state in such a way that it renders him incompetent to stand trial, the conviction of the defendant violates due process. *See Benson v. Terhune*, 304 F.3d 874, 885 (9th Cir. 2002) ("Even were we to assume that Benson had been medicated without her informed consent, she has not suffered any prejudice. She fails to establish that her constitutional trial rights—including the right to participate in her own defense - were affected or undermined by the challenged medication."); *Pate v. Robinson*, 383 U.S. 375, 388 n. 1 (1966) (distinguishing a procedural due process claim from "the simple claim that defendant was convicted while incompetent during the trial").

In the last reasoned decision resolving this claim,[2] the Arizona Court of Appeals found that "Larsgard ha[d] failed to present evidence demonstrating that the unidentified medications that the jail medical staff provided him significantly affected his access to counsel or his ability to participate in his own defense." (Doc. 9-9 at 141, Exh. SS at 5.) According substantial deference to the trial court's observations, the Court of Appeals reasoned that "[t]he trial court had the opportunity to observe Larsgard throughout the trial, and found that he was fully engaged in the trial and was able to and did communicate with counsel."  (Id.) It cited that the trial court had observed that "Mr. Larsgard was engaged fully in the trial of his case, taking notes, whispering with investigators, testifying lucidly and clearly and confronting [sic] with counsel, and he did not appear tired or out of it." (Id.) The state court found that the record "failed to support his claims that the medications made him restless, cloudy, unresponsive, nauseous, and largely apathetic toward life; or severely impacted his ability to communicate with counsel, prevented him from reacting rapidly to trial developments, sedated him, and diminished his ability to express emotions." (Doc. 9-9 at 140, Exh. SS at 4.)

Reaching the merits of Ground One, the R&R found that Petitioner had failed to

---

[2] When assessing a state court's determination, the Court looks to the last reasoned decision that finally resolves the claim at issue. *Godoy v. Spearman*, 834 F.3d 1078, 1084 (9th Cir. 2016); *Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014); *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

point to evidence showing that his medication regimen rendered him incompetent to stand trial, and therefore did not demonstrate that the appellate court's decision was based on an unreasonable determination of the facts. (Doc. 13 at 18-19.) Petitioner objects to this finding, arguing the R&R "fails to properly account for all the actions undertaken by the State that diminished and eroded Mr. Larsgard's competency both leading up to and during the trial." (Doc. 21 at 2.) Petitioner claims that the R&R either incorrectly interpreted the facts or failed to give sufficient weight to the evidence of his alleged incompetence.

First, in his objection, Petitioner points to his arraignment, arguing "it was clear there was something seriously wrong with Mr. Larsgard, as he provided a completely incorrect name to the court." (Doc. 21 at 3.) This evidence is unavailing. Even if assuming that Petitioner's false self-identification was a manifestation of forced medication or the discontinuation of medication, he does not explain how this evidence undermined his competence to stand trial months later. *See Williams v. Woodford*, 384 F.3d 567, 609 (9th Cir. 2004) ("With the exception of the incident at the preliminary hearing where Williams stood mute when questioned by the court, an incident that might simply have been a lapse in attention, the declarations do not point to any manifestation of Williams's incompetence in the trial-court record.").

Petitioner next objects by pointing to the fact that he was placed on suicide watch which he argues "shows that there were possible mental concerns that went unheeded by the court" and "[t]he fact that there is not a direct connection to the suicide watch and the trial several months later, as the Magistrate points out, is not relevant." (Doc. 21 at 5.) The Court disagrees. Whether Petitioner was previously suicidal or had other mental health issues does not, by operation, speak to his ability to understand proceedings and participate in his own defense at trial. *See United States v. Loyola-Dominguez*, 125 F.3d 1315, 1319 (9th Cir. 1997) ("[not] every suicide attempt inevitably creates a doubt concerning the defendant's competency."). Because the suicide watch in of itself is insufficient to show incompetency and Petitioner, as stated in the R&R, "proffers nothing

to relate his condition at the time of the suicide watch in October, 2011 to his mental condition at the time of trial in March, 2012," this argument is rejected. (Doc. 13 at 16.)

Petitioner further objects to the R&R on the basis that it incorrectly interprets the statements he made before the trial court, which he contends is evidence that his medication regimen impaired his cognitive abilities at trial. He cites:

> Mr. Larsgard told the court he was not given medication for 5-6 days, then given different medication that was "much weaker that he did not "react to well." R&R at 14. He said it "really hurts all the time and is distracting", and told the court he was experiencing "a lot more pain." Id. at 15. These are all indicative of the fact that Mr. Larsgard was suffering from constant severe pain with the cognitive impairment that follows.

(Doc. 21 at 4.) This objection is rejected. As addressed in the R&R, Petitioner's assertion that the record of his symptoms is evidence of cognitive impairment is conclusory and unsupported.

Rather, the evidence, when taken as a whole, belies Petitioner's allegations and supports the Arizona Court of Appeal's determination. The record reflects that Petitioner had a rational understanding of trial proceeding and ability to participate meaningfully in the process. While there were ongoing challenges concerning his medications, neither the defense nor the prosecution raised any issues regarding his competence. *See Benson v. Terhune*, 304 F.3d 874 (9th Cir. 2002); *Hernandez v. Ylst*, 930 F.2d 714, 718 (9th Cir. 1991) (finding it "significant that 'the trial judge, government counsel, and [defense counsel] ... did not perceive reasonable cause to believe [the defendant] was incompetent'"). Petitioner gave lengthy and cogent trial testimony that reflects that he had a sufficient ability to understand proceedings and to assist in defense; his testimony is inconsistent with his claims that his medication regimen rendered him incompetent to stand trial.

In support of his argument, Petitioner requests in his objection that the Court take judicial notice of the affidavit of his treating physician. Even if the Court were to take judicial notice of the affidavit, it offers no support for Petitioner's arguments. The

affidavit neither opines that physical "pain can have severe effects on cognition," nor does it explain how or if Petitioner's medication regimen affected his cognitive abilities at trial. *See Williams,* 384 F.3d at 609 (rejecting the significance of expert declarations because they "[did not] describe how [the petitioner's] probable mental impairment interfered with his understanding of the proceedings against him ...."). Rather, the affidavit offers only that Petitioner had been previously prescribed opioids and benzodiazepines, and his prescriptions had been effective for pain management "with little cognitive impairment." (Doc. 21-1.)

In short, Petitioner has failed to show that the decision of the Arizona Court of Appeal was contrary to or an unreasonable application of clearly established Supreme Court precedent, or that the state court's decision rested on a finding of fact that is objectively unreasonable. *See Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004); *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). In finding Petitioner had failed to establish that his medication regimen had rendered him incompetent to stand trial, the Arizona Court of Appeals considered the relevant factors such as the trial court's observations of his demeanor, Petitioner's conduct at trial, and his ability to participate in his defense. *See Riggins v. Nevada*, 504 U.S. 127, 137-38 (1992).

On federal habeas review, Petitioner has not adduced any evidence showing that he was under the influence of a drug that affected his mental capacity or that the discontinuation of medications interfered with his ability to understand the proceedings or assist counsel in presenting a defense. *See* 28 U.S.C. § 2254(e)(2). Nor does Petitioner point to any actual evidence that might suggest that the substance of his own testimony, his interaction with counsel, or his comprehension at trial was actually compromised by the administration or discontinuation of medications.[3]

---

[3] In his objection, Petitioner contends that the State put him "into a stun belt with absolutely no grounds to do so" which "diminished Petitioner's ability to communicate his concerns due to the possibility of being shocked." (Doc. 21 at 5.) Because Petitioner raised this claim for the first time in his reply, passingly incorporates it into a different claim, and fails to identify any portion of the record in support of it, this claim and objection is summarily rejected.

Petitioner having offered only unsupported conclusory allegations, and failed to present facts that create a real and substantial doubt as to his competency, Petitioner's incompetency claim is insufficient to warrant further evidentiary development. *Cf. U.S. v. Howard*, 381 F.3d 873, 881 (9th Cir. 2004) ("The record reveals that Howard was under the influence of a powerful narcotic drug that could have affected his cognition; the only question is whether it actually did. That he could have been rendered incompetent, and specifically and credibly claims to have been so, is sufficient to tip the scales in favor of an evidentiary hearing on this aspect of his claim."). Therefore, Petitioner's claim in Ground One fails on the merits.

### B.     Lab Report and Expert

In Ground Two, Petitioner claims that he was denied due process when the trial court failed to preclude a late disclosed lab report and associated expert that showed Petitioner had drugs present in his system at the time he was arrested. (Doc. 1 at 30.)

In considering this claim on appeal, the Arizona Court of Appeals found that the trial court's ruling was not an abuse of discretion in failing to impose a discovery sanction on the prosecution for the late disclosure and preclude use of the lab report at trial. (Doc. 9-9, Exh. SS.) The R&R concluded that even if Petitioner had failed to show that the trial court's decision was erroneous, Petitioner had offered nothing to suggest that the state court's actions were so egregiously wrong that it amounted to a denial of due process.[4] (Doc. 13 at 24.) Petitioner objects to this conclusion on the basis that the R&R erred in "dismiss[ing] the impact" of the late disclosure, in that it had "changed the posture of the case on the eve of trial." (Doc. 21 at 7.)

"[F]ederal habeas corpus relief does not lie for errors of state law," *Lewis v.*

---

[4]     The R&R alternatively finds that Petitioner's challenge to the trial court's treatment of the late disclosure of the lab report and expert failed construed as a speedy trial claim or a state law claim. The R&R additionally addresses whether *the prosecution* violated Petitioner's due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963) by the late disclosure of the lab report and expert witness. Because Petitioner did not raise these claims in his habeas petition (*see* Doc. 1 at 30-31) and, with exception of the state law violation, did not present them on direct appeal (*see* Doc. 9-9, Exhs. OO, SS), the Court does not reach Petitioner's objections as they relate to these alternative theories.

8

*Jeffers*, 497 U.S. 764, 780 (1990), and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). For purposes of federal habeas review, a trial court's admission of evidence may deny due process of law where it is "so extremely unfair" that it "violates fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352 (1990); *see also Perry v. New Hampshire*, 132 S.Ct. 716, 723 (2012); *Engle v. Isaac*, 456 U.S. 107, 119 (1982); *Lisenba v. People of State of California*, 314 U.S. 219, 228 (1941) (federal courts "do not sit to review state court action on questions of the propriety of the trial judge's action in the admission of evidence[,]" but look to whether the admission of evidence "so infused the trial with unfairness as to deny due process of law.").

First, as addressed by the Arizona Court of Appeals, the lab report was relevant. *Cf. Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991) (the admission of evidence violates due process only when there are no permissible inferences that can be drawn from the evidence). "The results were [] important to the State's case because they demonstrated that oxycodone and three types of muscle relaxants were present in Larsgard's bloodstream, thereby providing a possible explanation for his aggressive driving during the incident." (Doc. 9-9, Exh. SS.)  Petitioner did not aver that the prosecution had acted in bad faith. Rather, "the State had timely disclosed that it was waiting for the lab results, and the disclosure was not a surprise to Larsgard when he received them shortly before trial." (Id.)

Second, the admission of the lab report did not encumber Petitioner's right to present a complete defense. *See Taylor v. Illinois,* 484 U.S. 400, 410 (1988); *Chambers v. Mississippi,* 410 U.S. 284, 302 (1972); *Pennsylvania v. Ritchie,* 480 U.S. 39, 56 (1987). As observed by the Arizona Court of Appeals, the court continued the trial to allow defendant additional time to prepare. Petitioner was afforded time to interview the witness who would testify about the results, and was afforded time to obtain his own expert witness. At trial, Petitioner's private physician testified concerning the drugs which he had prescribed Petitioner. (Doc. 9-6, Exh. DD, Tr. 3/22/12 at 5.) Petitioner fails

to identify what other action he would have taken to rebut the state's expert opinion had the evidence been disclosed earlier. Nor does Petitioner show that, even if assuming that the admission of evidence was unconstitutional, the trial error resulted in actual prejudice. *See Davis v. Ayala*, 135 S.Ct. 2187, 2197-98 (2015).

Therefore, having failed to show that the Arizona Court of Appeals unreasonably applied clearly established federal law, Petitioner's claim concerning the late-disclosed lab report and expert witness fails on the merits.

### C. Videotape

In Ground Two, Petitioner next claims that the prosecution withheld evidence that was exculpatory in violation of his federal constitutional rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

At trial, Winslow Police Officer Alicia Marquez testified that while Petitioner was in a holding cell following his arrest, he advised her that he wanted to give only a written statement (Doc. 9-5, Exh. BB, Tr. 3/21/12 at 134), and that Petitioner fluctuated between being "real calm" and being "irate or aggressive" (Doc. 9-5, Exh. BB, Tr. 3/21/11, at 140). Officer Marquez acknowledged that there were security cameras in the location where Petitioner had been detained. Petitioner claims that the State failed to disclose both the content of Officer Marquez's testimony and the video of the events in the booking room.

Under clearly established federal law, a defendant has a due process right to favorable evidence in the prosecution's possession that is material to guilt or punishment. *Brady* v. *Maryland*, 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, "a defendant must show that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the government, regardless of whether the suppression was willful or inadvertent; and (3) the evidence is material to the guilt or innocence of the defendant." *United States v. Sedaghaty*, 728 F.3d 885, 899 (9th Cir. 2013) (citing *Brady, supra*). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the

defense, the result of the proceeding would have been different.'" *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)).

In its decision, the Arizona Court of Appeals found that Petitioner had "failed to demonstrate a *Brady* violation with respect to the booking tape." (Doc. 9-9, Exh. SS.)[5] The R&R concluded the same. Petitioner objects to the R&R's rejection of this claim on the basis that the evidence was not favorable to him.

First, the Court agrees with the R&R that, to the extent Petitioner challenges the prosecution's failure to disclose the anticipated testimony to be offered by Officer Marquez, that does not constitute a *Brady* violation. The testimony was not exculpatory or impeaching. Petitioner does not claim that the fact that Marquez would testify was not disclosed to the defense.

Second, even if assuming that a video tape of Petitioner in the booking room following his arrest exists, the video shows his demeanor, and that footage would impeach the credibility of the testimony offered by Officer Alecia Marquez, or would show Petitioner acting in some favorable manner, Petitioner fails to show that the evidence was material. At trial, the State offered numerous witnesses who testified concerning the incidents and their observations of Petitioner's demeanor. (*See e.g.*, Doc. 9-3, Exh. Z, Tr. 3/15/12, at 107-77; 178-205, 205-32; Doc. 9-4, Exh. AA, Tr.

---

[5]   The court reasoned:

> First, he has failed to demonstrate the existence of a "booking tape" that would have clearly shown his demeanor or captured his remark that he would make only a written statement. The evidence did not show that the security camera was focused on Larsgard, that it was turned on, or that the tape was retained after that night. Second, he has failed to demonstrate that, had the booking tape shown his demeanor or captured his remarks, the evidence would have contradicted the officer's testimony. Finally, he has failed to demonstrate a reasonable probability that, even if the tape had contradicted this officer's testimony, the result of his trial would have been any different. On this record, we find that Larsgard has failed to demonstrate a Brady violation with respect to the booking tape.

(Doc. 9-9, Exh. SS at 9.)

3/16/12, at 7-62, 64-99, 100-25, 127-56, 157-199; Doc. 9-5, Exh. BB. Tr. 3/21/12, at 33-69.) Nothing has been offered which might lead to the conclusion that the video would have affected the jury's finding concerning his behavior or state of mind during the relevant events such that it would undermine confidence in the outcome of the trial. *Cf. Shelton v. Marshall*, 796 F.3d 1075, 1089 (9th Cir. 2015) (finding prosecution's suppression of impeachment evidence undermined confidence in the outcome of the trial where it involved the only witness who provided direct evidence that the murder was deliberated and premeditated). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *U.S. v. Agurs*, 427 U.S. 97, 109–10 (1976). Therefore, this claim in Ground Two also fails on the merits.

### D. Remaining Claims

In his objection, Petitioner does not object to the R&R's finding that his claim in Ground Two as to the non-disclosure of civil lawsuits lacks merit. Further, while Petitioner's objection reiterates the underlying basis for his claim in Ground Three, he makes no reference or objects to the R&R's conclusion that his claims in Grounds Three or Four are procedurally defaulted and barred from review. Therefore, no proper objection having been made, and finding the R&R is well-taken on review, the Court summarily adopts the Magistrate Judge's findings as to these remaining claims.

## III. Conclusion

Having reviewed the record as a whole, and finding none of Petitioner's objections have merit, the R&R will be adopted in full. Accordingly,

**IT IS ORDERED:**

1. That Magistrate Judge Metcalf's Report and Recommendation (Doc. 13) is **accepted** and **adopted** by the Court;

2. That the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) is **denied** and this action is **dismissed with prejudice**;

3. That a certificate of appealability and leave to proceed *in forma pauperis* on

appeal are **denied**; and

    4.    That the Clerk of Court shall **terminate** this action.

Dated this 21st day of December, 2016.

                                      Honorable Steven P. Logan
                                      United States District Judge